UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| POULAT ALAYEV, Derivatively on behalf of UNPA GROUP LIMITED,<br><br>                    Plaintiffs,<br><br>-against-<br><br>ARKADY (ARIHAY) KAIKOV, ZHENISBEK BAKBERGEN, NIGARA KHIDOYATOVA, ANDRE STECKLER, STEWARTON LIMITED and UNPA GROUP LIMITED,<br><br>                    Defendants. | Civil Action No. 22CV1609<br><br>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |

Plaintiff, POULAT ALAYEV ("Alayev") by his attorney, Donald J. Weiss, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants herein named.

## JURISDICTION AND PARTIES

1. Alayev is a citizen and resident of the State of New Jersey.

2. Defendant ARKADY (ARIHAY) KAIKOV ("Kaikov") is a citizen and resident of the State of New York, County of Nassau.

3. Defendant ZHENISBEK BAKBERGEN ("Bakbergen") is a citizen and resident of the Republic Kazakhstan.

4. Defendant NIGARA KHIDOYATOVA ("Khidoyatova") is a citizen of the Republiz of Uzbekistan and currently a resident of the State of California.

5. Defendant ANDRE STECKLER ("Steckler") is a citizen and resident of Germany.

6. Defendant STEWARTON LIMITED ("Stewarton") is a British Virgin Islands corporation located in Tortola, BVI.

7. Defendant UNPA GROUP LIMITED ("UNPA") is a New York Corporation with its principal place of business in Brooklyn, New York.

8. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §1964(c), as the actions complained of herein violated the Racketeer Influenced and Corrupt Organization Act ("RICO") and 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different States. The Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. §1367.

9. The action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

## VENUE

10. Venue is proper pursuant to 28 U.S.C. §1391(b)(3) as Kaikov resides in this judicial district and is subject to the court's personal jurisdiction with respect to this action.

## NATURE OF THE ACTION

11. This action is brought by Alayev on behalf of UNPA as a shareholder as the result of defendants' fraudulent and wrongful conduct, with resulting claims for breach of fiduciary duty, conversion, unjust enrichment and replevin, together with a request for a permanent injunction. A cause of action against the defendants to recover damages stemming from their illegal activities prohibited by the Racketeer Influenced and Corrupt Organization Act (18 U.S.C. §1961 et seq.) is also set forth. When not identified individually, the term "defendants" shall mean all defendants.

## FACTUAL BACKGROUND

12. In or about March 2020, Khidoyatova offered an opportunity to Alayev to form a

2

New York corporation and obtain a valuable commodity (one metric ton of copper isotope powder (hereinafter, the "Asset") owned by Bakbergen, who had agreed to transfer the ownership of the Asset to the newly created corporation.

13. The Asset was held in the name of Stewarton, which was wholly owned by Bakbergen. Bakbergen had been unsuccessful in monetizing or selling the Asset for many years.

14. The Asset has a current value of approximately Two Billion ($2,000,000,000) Dollars and, in exchange for the Asset, Bakbergen was to be given a 25% ownership in the newly formed corporation.

15. Khidoyatova explained to Alayev that Bakbergen was having problems paying for the Asset's storage in at ProSafe, a German warehouse facility, and was in danger of forfeiting the Asset.

16. For that reason, Bakbergen was willing to transfer the asset in exchange for a 25% share, and once the Asset was transferred, the parties would work together to monetize the Asset.

17. Alayev introduced Kaikov to this potential opportunity, who became very interested and offered to assume initial financial obligations of the new corporation prior to monetizing the Asset, including making the Asset storage account current.

18. In exchange, it was agreed that Kaikov would receive a 25% interest in the new corporation.

19. UNPA was incorporated pursuant to the laws of the State of New York on May 13, 2020.

20. On May 20, 2020, Alayev, Kaikov, Khidoyatova and Bakbergen entered into a

shareholder agreement which identified each of the foregoing as a 25% shareholder of UNPA (the "Shareholders Agreement").

21. At all times relevant hereto, Alayev was and remains a 25% shareholder of UNPA.

22. On May 26, 2020, UNPA passed a resolution whereby it was resolved that UNPA would purchase/accept transfer of the Asset from Stewarton.

23. On June 12, 2020, the Asset was transferred to UNPA.

24. The Asset was the only asset of UNPA.

25. On September 22, 2021, Alayev was authorized by UNPA to act on its behalf with respect to the trading and financing of the Asset.

26. As a result of the foregoing, Alayev traveled to Germany and on November 4, 2021, he was issued a receipt for the Asset from ProSafe, which identified UNPA as the owner of the Asset.

27. Later that month, ProSafe sent notice that an adverse ownership claim had been made against the Asset.

28. While ProSafe has failed to respond to Alayev's inquiries as to who is claiming the adverse interest against the Asset and based on what documents such claim is made, Alayev has been advised by a private placement intermediary that Stewarton is claiming ownership of the Asset and has applied for private financial placement, encumbering the asset.

29. Alayev was further advised that Kaikov, Khidoyatova and Bakbergen were all participants in the scheme to finance the Asset through Stewarton and to defraud Alayev.

30. Upon learning of the Stewarton claim and defendants' participation, Alayev

reached out to each of the parties with a demand to return the legal ownership of the Asset to UNPA.

31. Bakbergen is in Kazakhstan and dozens of text messages and phone calls have been made through WhatsApp to both Bakbergen and his agent, but there has been no response.

32. Alayev has spoken with Kaikov who, in response to Alayev's demand that all claims of ownership to the Asset be withdrawn by Stewarton, responded that he would arrange to do so upon receipt of a general release from Alayev.

33. Alayev also spoke with Khidoyatova, who stated that Bakbergen will return the Asset to UNPA, however, no such action has been taken.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Bakbergen, Kaikov and Khidoyatova)

34. Alayev repeats and realleges the allegations contained in paragraphs 1 through 33 as though fully set forth at length herein.

35. It is well established under New York law that officers and directors of a corporation stand in a fiduciary relationship to the corporation and owe their undivided and unqualified loyalty to the corporation.

36. Shareholders of a closely held corporation also owe stand is a fiduciary relationship similar to a partnership.

37. Bakbergen, Kaikov and Khidoyatova (collectively, "BKK") as directors and shareholders in a closely held corporation, owe a duty of loyalty and good faith to UNPA.

38. In addition to the common law duties imposed on directors, New York Business Corporation Law §717 imposes a statutory duty on directors to act in good faith.

5

39. BKK breached their common law and statutory duties to UNPA by engaging in self-dealing and misappropriating the Asset for themselves.

40. As a direct and proximate result of BKK's failure to perform their fiduciary obligations, UNPA has sustained significant damages in such amount as shall be determined at trial, but not less than $2,000,000,000.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Violation of RICO by BKK and Steckler)

41. Alayev repeats and realleges each and every allegation contained in paragraphs 1 through 40 of this complaint as if set forth more fully herein.

42. This civil cause of action is brought by the plaintiff against BKK and Steckler (collectively, "the RICO Defendants") pursuant to RICO.

43. The RICO Defendants' conduct is within the meaning, and in violation, of 18 U.S.C. Sec. 1962 (a), (b), (c) and (d) prohibited activities.

44. That each RICO Defendant is a "person" within the meaning of 18 U.S.C. Sec. 1961(3).

45. That the association between the RICO Defendants with its structure and overall objective is an "enterprise" within the meaning of 18 U.S.C. Sec. 1961(4) and is referred to hereinafter as "RICO enterprise".

46. That in or about October, 2021, the RICO Defendants devised a scheme with the goal of defrauding UNPA and divesting UNPA of its ownership interest in the Asset by means of wrongful misappropriation of the Asset as follows: fraudulent and/or forged documents or instruments ("Scheme 1"), false financial statements ("Scheme 2"), fraudulent transfer of the

6

Asset to themselves or entities under their control ("Scheme 3"), embezzlement or taking the Asset, either directly or indirectly, from UNPA with the intent to deprive UNPA, the rightful owner of the Asset, without the permission or authority to do so ("Scheme 4"), the fraudulent misappropriation and diversion of the earnings and/or profits from the operation of UNPA ("Scheme 5") and money laundering ("Scheme 6"), to the use and gain of the defendants and the RICO enterprise conducted by them.  Schemes 1 through 6 hereinafter shall be collectively referred to as the "UNPA RICO Schemes".

47.     That the UNPA RICO Schemes were perpetrated by the RICO Defendants against UNPA during a period from or about October, 2021 until the present time. Each statement or false financial report made by the RICO Defendants to UNPA constituted separate injury on the date when made, including March, 2021, October 2021, November 2021, December 2021 and March 2022.

48.     That in order to further and/or to accomplish the UNPA RICO Schemes, the enterprise has engaged in a pattern of racketeering activity in violation of 18 U.S.C. Sec. 1343 and 18 U.S.C. Sec. 1961(1), whereby there were two or more wire communications in furtherance of the fraudulent schemes.

49.     That some of the fraudulent statements/documents made by the RICO Defendants in furtherance of the UNPA RICO Schemes perpetrated upon the plaintiffs are identified as follows, (with many other similar fraudulent statements having been made from March, 2021 until March, 2022:

| | | |
|---|---|---|
| 03/21 | Kaikov<br>New York | Steckler<br>Germany |
| 03/21 | Kaikov | Hendrik Rutz |

7

|       | New York | Germany |
|-------|----------|---------|
| 10/21 | Khidoyatova<br>California | Alayev<br>New York and New Jersey |
| 10/21 | Bakbergen<br>Kazakhstan | Alayev<br>New York and New Jersey |
| 10/21 | Kaikov<br>New York | Alayev<br>New York and New Jersey |
| 11/21 | Khidoyatova<br>California | Alayev<br>New York and New Jersey |
| 11/21 | Bakbergen<br>Kazakhstan | Hendrik Rutz<br>Germany |
| 11/21 | Kaikov<br>New York | Hendrik Rutz<br>Germany |
| 11/21 | Kaikov<br>New York | Alayev<br>New York and New Jersey |
| 12/21 | Khidoyatova<br>California | Alayev<br>New York and New Jersey |
| 12/21 | Kaikov<br>New York | Alayev<br>New York and New Jersey |
| 03/22 | Khidoyatova<br>California | Alayev<br>New York and New Jersey |
| 03/22 | Bakbergen<br>Kazakhstan | Alayev<br>New York and New Jersey |
| 03/22 | Kaikov<br>New York | Alayev<br>New York and New Jersey |
| 03/22 | Khidoyatova<br>California | Financial Institutions<br>Switzerland and Germany |

50. That the nature and substance of the fraudulent statements and actions taken by the RICO Defendants were as follows:

8

(a) <u>March 2021 Illegal Resolution of the Board</u>. On March 1, 2021 Kaikov signed a purported UNPA Board Resolution without calling a board meeting authorizing and conferring substantial power on Steckler to act on UNPA's behalf with respect to the Asset.

On or about March 1, 2021, Kaikov advised Steckler that he was granted authority by UNPA to act on its behalf in financing or placing the Asset in trade.

(b) <u>October 2021 Statements.</u> The following fraudulent statements were made by Khidoyatova:

- The Asset is in Germany at ProSafe but there is a balance of almost $60,000.00 for storage that has to be paid;

- Bakbergen cannot pay the storage fees and UNPA has to pay it right away;

- Storage fees to ProSafe have to be paid in order to proceed with private placement of the Asset, which all shareholders are working on monetizing for the benefit of UNPA and its shareholders.

(c) <u>November 2021 Fraudulent Instrument.</u> The following fraudulent instrument (KYC -Know Your Client- dated November 25, 2021 was used by BKK to place the Asset in trade:

- KYC dated November 25, 2021 with forged or manufactured initials, signature and fingerprints of Alayev;

- Steckler, Bakbergen and Kaikov advised Henrik Rutz of ProSafe that the Asset is owned by Stewarton and that UNPA had transferred the ownership to Stewarton.

(d) <u>December 2021Statements.</u> The following fraudulent statements were made by both Khidoyatova and Kaikov:

9

- The Asset is owned by UNPA and it is unencumbered

(e)  March 2022 Statements.  The following fraudulent statements were made by Kaikov:

- The Asset may have been transferred by Bakbergen to Stewarton, I do not know details, but I can make bring it back if Alayev gives me a general release;

The following fraudulent statements were made by Khidoyatova:

- KYC was executed by Alayver who place his initials and fingerprints on the KYC submitted to the financial institutions in Switzerland and Germany.

51. That the statements and actions made and taken by the RICO Defendants, set forth above, were knowingly false, as follows:

(a)  March 2021 Illegal Resolution of the Board. The March 1, 2021 resolution signed by Kaikov was unlawful, without the requisite Board or shareholders' consent or deliberation with sole intent to transfer or encumber the Asset without UNPA's approval. That Kaikov's statements to Steckler that he was granted lawful authority by UNPA to act on its behalf in financing or placing the Asset in trade was deliberately false, as no such authority was given.

(b)  October 2021 Statements.  The statements made by Khidoyatova that there is balance of almost $60,000.00 for storage or that storage fees to ProSafe have to be paid in order to proceed with private placement of the Asset were untrue, as the storage fees were paid, the Asset could be placed in trade, but Khodoytaova chose to deceive UNPA so that the illegal transfer of the Asset to Stwearton could be accomplished. BKK were not working for the benefit of UNPA and its shareholders, but rather on perpetrating their schemes.

(c)  November 2021 Fraudulent Instrument.  KYC dated November 25, 2021 with forged or manufactured initials, signature and fingerprints of Alayev was prepared and submitted

10

to financial institution with intent to transfer or encumber the Asset without UNPA's or Alyev's knowledge or consent. ProSafe was advised by BKK and Steckler that UNPA is no longer the Asset owner and that it transferred the Asset to Stewarton, which was not true and used to accomplish the RICO Defendants' racketeering schemes.

(d) December 2021Statements.  Khidoyatova and Kaikov falsely stated that the Asset is owned by UNPA and is unencumbered, when in fact, they already accomplished the illegal transfer of the Asset to Stewarton.

(e) March 2022 Statements.  Kaikov's statements that "the Asset may have been transferred by Bakbergen to Stewarton, I do not know details, but I can make him bring it back" was an intentional lie and deception as he was a part of the illegal transfer of the Asset from UNPA to Stewarton in or about November, 2021.

Kaikov falsely stated that the Asset is owned by UNPA and is unencumbered, when in fact, the illegal transfer of the Asset to Stwearton had already taken place.

KYC dated November 25, 2021 was resubmitted in the beginning of March, 2022 to financial institution(s) containing forged or manufactured initials, signature and fingerprints of Alayev on behalf of UNPA.

52. That the above statements made by the RICO Defendants, and the documents prepared, were intended to perpetrate the on-going and existing conspiracy between the RICO Defendants of diverting and misappropriating UNPA's sole Asset, investment, business opportunity, income and profits. That the RICO Defendants have misappropriated the Asset for substantial gain to them and have derived substantial income at the expense of UNPA.

53. That the UNPA's and Alayev's property and funds derived from the use thereof,

11

illegally and fraudulently obtained by the RICO enterprise from UNPA, were used to finance the operation of the enterprise, in violation of 18 U.S.C. Sec. 1962(a), (b) and (c). That the conspiracy between the RICO Defendants violated 18 U.S.C. Sec. 1962(d).

54. That the above illegal activities by the RICO Defendants constitute a "pattern of racketeering activity" within the meaning of RICO.

55. That the association between the RICO Defendants and the structure established by them whereby money or property of UNPA were taken illegally, without consideration and to UNPA's financial injury and detriment, is a RICO enterprise within the meaning of RICO.

56. As a result of the RICO Defendants' violation of RICO, UNPA has been injured in its property or business. Specifically, as a proximate result of the RICO Defendants' illegal activities and subsequent violation by the RICO Defendants of Section 1962 of Title 18 of the United States Code, UNPA lost the Asset valued at $2 billion. The injury to UNPA was the direct result of the RICO Defendants having control of the enterprise and their ability to further the goals of the enterprise through racketeering activity.

57. That UNPA has been injured in its property by reason of a violation of 18 U.S.C. Sec. 1343 committed by the RICO Defendants within the meaning of 18 U.S.C. Sec. 1964 by various schemes in that:

    a. fraudulent misappropriation of the Asset by means of fraudulent and/or forged documents or instruments ("Scheme 1");

    b. false financial statements ("Scheme 2");

    c. fraudulent transfer of assets and property of UNPA to themselves or entities under their control ("Scheme 3");

d. embezzlement or taking the Asset, either directly or indirectly, from UNPA with the intent to deprive UNPA, the rightful owner of the Asset without the permission or authority to do so ("Scheme 4");

e. the fraudulent misappropriation and diversion of the earnings and/or profits from the operation of UNPA ("Scheme 5");

f. and money laundering ("Scheme 6").

58. That the income, profits and/or proceeds from the sale of the Asset by the RICO Defendants, illegal transfer or sale of the Asset with intention to freeze Alayev out from UNPA's decision-making were all a part of the RICO Defendants' schemes and for the purpose of RICO Defendants' illegal use and gain from the Asset with full knowledge thereof and participation by the RICO Defendants. Such illegal gains derived by the RICO Defendants from racketeering activity were used to finance their enterprise, causing injury to UNPA.

59. That the RICO Defendants continue to participate as an enterprise in illegal activities affecting the interstate commerce.

60. That UNPA has been injured in its property in the sum of $2 billion by reason of the RICO Defendants ' racketeering schemes, in violation of Organized Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations, 18 U.S.C. Sec. 1961 et seq..

61. Treble damages pursuant to 18 U.S.C. Sec. 1961(4) in the sum of $6 billion with interest to the date of the verdict and legal fees and costs are demanded.

## AS AND FOR A THIRD CAUSE OF ACTION

**(Violation of New York Business Corporation Law §909)**

62. Alayev repeats and realleges each and every allegation contained in paragraphs 1

13

through 61 of this complaint as if set forth more fully herein.

63. It is well established under New York law (BCL §909) that:

(a) A sale, lease, exchange or other disposition of all or substantially all the assets of a corporation, if not made in the usual or regular course of the business actually conducted by such corporation, shall be authorized only in accordance with the following procedure:
(1) The board shall authorize the proposed sale, lease, exchange or other disposition and direct its submission to a vote of shareholders.
(2) Notice of meeting shall be given to each shareholder of record, whether or not entitled to vote.
(3) The shareholders shall approve such sale, lease, exchange or other disposition and may fix, or may authorize the board to fix, any of the terms and conditions thereof and the consideration to be received by the corporation therefor, which may consist in whole or in part of cash or other property, real or personal, including shares, bonds or other securities of any other domestic or foreign corporation or corporations, by vote at a meeting of shareholders of (A) for corporations in existence on the effective date of this clause the certificate of incorporation of which expressly provides such or corporations incorporated after the effective date of this clause, a majority of the votes of all outstanding shares entitled to vote thereon or (B) for other corporations in existence on the effective date of this clause, two-thirds of the votes of all outstanding shares entitled to vote thereon.

64. The Asset was and is the sole and only asset of UNPA.

65. The transfer or sale of the Asset to anyone was not done in a regular course of UNPA's business.

66. There have been no Board of Directors or shareholders' meetings of UNPA regarding the sale, transfer or assignment of the Asset to anyone, including Stewarton.
 was not done in a regular course of business.

67. There have been no notices of Board of Directors or shareholders' meetings of UNPA regarding the sale, transfer or assignment of the Asset to anyone, including Stewarton.

68. The sale, transfer or assignment of the Asset to anyone, including Stewarton, was done illegally, contrary to the parties' agreement and violation of New York law.

69. By virtue thereof, an order of the Court setting aside the conveyance, sale, transfer

14

or assignment of the Asset to anyone, including Stewarton, is demanded.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Declaratory Judgment)

70. Alayev repeats and realleges each and every allegation contained in paragraphs 1 through 69 of this complaint as if set forth more fully herein.

71. As a result of the foregoing, UNPA is entitled to a declaratory judgment stating that the Asset was and remains the property of UNPA.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Attorney Fees)

72. Alayev repeats and realleges each and every allegation contained in paragraphs 1 through 71 of this complaint as if set forth more fully herein.

73. Pursuant to the terms of the Shareholders Agreement, the prevailing party in any action in any matter pertaining to UNPA is entitled to recover legal fees. Legal fees paid on UNPA's behalf by Alayev are demanded from the defendants, in such amount as shall be proven upon the trial of this action and/or fixed by the Court.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Conversion)

74. Alayev repeats and realleges the allegations contained in paragraphs 1 through 73 as though fully set forth at length herein.

75. UNPA was and remains the legal owner of the Asset.

76. Defendants have unlawfully and without authority converted the Asset for their own benefit and use and have refused to return same to UNPA, despite due demand therefore.

15

77. As a result of the foregoing, UNPA has sustained damages in such amount as shall be determined at trial, but not less than $2,000,000,000.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

78. Alayev repeats and realleges the allegations contained in paragraphs 1 through 77 as though fully set forth at length herein.

79. As a result of defendants' wrongful conduct, defendants have been enriched by the value of the Asset to the detriment of UNPA.

80. As a result of the foregoing, UNPA has sustained damages in such amount as shall be determined at trial, but not less than $2,000,000,000.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Replevin)

81. Alayev repeats and realleges the allegations contained in paragraphs 1 through 80 as though fully set forth at length herein.

82. Defendants have wrongfully taken and converted the Asset which rightfully belongs to UNPA.

83. Pursuant to Article 71 of the CPLR, UNPA is entitled to the immediate seizure of the Asset to the extent of any ownership, possession or control by defendants, or any tangible asset in any form defendants may otherwise have obtained, including, but not limited to, the collateralization or monetization in any way, by, from, through or as a result of the Asset.

84. If the Asset has been monetized or collateralized, the proceeds derived from such monetization or collateralization may be the only source for recovering the amounts due to

UNPA as a result of the wrongful taking of the Asset.

85. UNPA has no adequate remedy at law and will suffer irreparable harm unless the Asset is (or the proceeds therefrom are) seized because the Asset is located out of the country and, as evidenced by defendants' conduct in converting the Asset and refusing to return same to UNPA, defendants are likely to attempt to transport or conceal the Asset so that UNPA will be unable to take possession.

## AS AND FOR A NINTH CAUSE OF ACTION

### (Permanent Injunction)

86. Alayev repeats and realleges the allegations contained in paragraphs 1 through 85 as though fully set forth at length herein.

87. In the event defendants are permitted to dispose of the Asset, UNPA will be irreparably damaged as the Asset is unique and irreplaceable.

88. UNPA has no adequate remedy at law.

89. The equitable remedy of permanently enjoining defendants from disposing or utilizing the Asset in any way or form is warranted upon consideration of the balance of hardships between UNPA and the defendants.

90. The permanent injunction being sought would not hurt the public interest.

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the defendants, in favor of Plaintiff, containing the following relief:

A. on the first cause of action, the sum of $2,000,000,000 as the result of the breach of fiduciary by defendants Bakbergen, Kaikov and Khidoyatova;

B. on the Second Cause of Action, for violation of RICO by defendants Bakbergen, Kaikov, Khidoyatova and Steckler, treble damages of $6,000,000,000;

C. on the Third Cause of Action, setting aside the conveyance, sale, transfer or assignment of the Asset as the result of violation of the NY Business Corporation Law;

D. on the Fourth Cause of Action, a declaratory judgment stating that the Asset was and remains the property of UNPA;

E. on the Fifth Cause of Action, find that plaintiff is the prevailing party in this action and award attorney's fees in such amount as shall be proven upon the trial of this action and/or fixed by the Court;

F. on the Sixth Cause of Action, the sum of $2,000,000,000 as the result of conversion of the Asset;

G. on the Seventh Cause of Action, the sum of $2,000,000,000 as the result of unjust enrichment;

H. on the Eighth Cause of Action, directing defendants to return the Asset to UNPA;

I. on the Ninth Cause of Action, directing issuance of a permanent injunction

J. For such other and further relief to which plaintiff may be justly entitled.

Dated: March 23, 2022

*Donald J. Weiss*

Donald J. Weiss, Esq. (7619)
Attorney for Plaintiff
830 Long Island Avenue
Deer Park, NY 11729
(212) 967-4440